UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2007 Grand Jury

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 07-**07 01365** |
| | ) | |
| Plaintiff, | ) | I N D I C T M E N T |
| | ) | |
| v. | ) | [21 U.S.C. § 846: Conspiracy to Possess with Intent to Distribute and to Distribute Methamphetamine; 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii), (b)(1)(A)(viii), (b)(1)(B)(iii), (b)(1)(B)(viii): Distribution of Methamphetamine and Cocaine Base] |
| PAUL MILTON CORTEZ JOVEL, | ) | |
|   aka "Oscar Antonio Chacon," | ) | |
|   aka "Lil Man," | ) | |
| ADOLFO MADRIGAL LOPEZ, and | ) | |
| JOSE FREDI ORELLANA, | ) | |
|   aka "Pitbull," | ) | |
|   aka "Mysterio," | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

The Grand Jury charges:

COUNT ONE

[21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(viii)]

A.   OBJECTS OF THE CONSPIRACY

Beginning on an unknown date, and continuing to on or about August 4, 2006, in Los Angeles County, within the Central District of California, defendants PAUL MILTON CORTEZ JOVEL, also known as ("aka") "Oscar Antonio Chacon," aka "Lil Man" ("CORTEZ"); ADOLFO MADRIGAL LOPEZ ("LOPEZ"); JOSE FREDI ORELLANA,

SMG:smg

1  aka "Pitbull," aka "Mysterio" ("ORELLANA"); and others known and
2  unknown to the Grand Jury, conspired and agreed with each other
3  to knowingly and intentionally possess with the intent to
4  distribute and to distribute more than fifty (50) grams of
5  methamphetamine (actual), a schedule II controlled substance, in
6  violation of Title 21, United States Code, Sections 841(a)(1),
7  (b)(1)(A)(viii).

8  B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE
9       ACCOMPLISHED

10      The objects of the conspiracy were to be accomplished in
11  substance as follows:

12      1.   Defendants CORTEZ and ORELLANA would find an individual
13  to act as a buyer to purchase methamphetamine from defendant
14  LOPEZ and would agree to provide the buyer with the money to
15  purchase the methamphetamine.

16      2.   Defendants CORTEZ and ORELLANA would negotiate a price
17  for the methamphetamine with defendant LOPEZ, and would arrange
18  for the buyer to purchase the methamphetamine from defendant
19  LOPEZ at an agreed upon location.

20      3.   Defendants CORTEZ and ORELLANA would go to the agreed
21  upon location and would provide the buyer with the money to
22  purchase methamphetamine from defendant LOPEZ.

23      4.   Defendant LOPEZ would go to the agreed upon location
24  and would sell the methamphetamine to the buyer, who was acting
25  on behalf of defendants CORTEZ and ORELLANA, at the agreed upon
26  price.

27      5.   Defendants CORTEZ and ORELLANA would meet with the
28  buyer after the purchase to inspect the methamphetamine purchased

2

1  from defendant LOPEZ.

2      6.   Defendants CORTEZ and ORELLANA would instruct the buyer

3  to resell the methamphetamine at a higher price and would later

4  collect the profits from the resale from the buyer.

5  C.   OVERT ACTS

6      In furtherance of the conspiracy and to accomplish the

7  objects of the conspiracy, defendants CORTEZ, ORELLANA, and

8  LOPEZ, and others known and unknown to the Grand Jury, committed

9  various overt acts in Los Angeles County, within the Central

10  District of California, including, but not limited to, the

11  following:

12      1.   On or about a date between July 23, 2006, and July 31,

13  2006, defendant CORTEZ spoke with a confidential informant ("CI-

14  1") and offered to provide CI-1 with $4,000 in cash to purchase

15  one-half pound of methamphetamine from defendant LOPEZ.

16      2.   On or about a date between July 23, 2006, and July 31,

17  2006, defendant CORTEZ proposed that CI-1 resell the

18  methamphetamine CI-1 would purchase from defendant LOPEZ and give

19  defendant CORTEZ the proceeds CI-1 would make from reselling the

20  methamphetamine.

21      3.   On or about August 1, 2006, defendants CORTEZ and

22  ORELLANA spoke with CI-1 and instructed CI-1 to meet them later

23  that day at a Burger King restaurant located at the corner of

24  Vermont Avenue and Washington Boulevard in Los Angeles (the

25  "Burger King restaurant").

26      4.   On or about August 1, 2006, defendants CORTEZ and

27  ORELLANA met with CI-1 at the Burger King restaurant.

28      5.   On or about August 1, 2006, defendant CORTEZ instructed

3

1   CI-1 to resell the methamphetamine CI-1 was scheduled to purchase

2   from defendant LOPEZ and to return $8,000 from the resale to

3   defendant CORTEZ.

4        6.   On or about August 1, 2006, defendant ORELLANA provided

5   CI-1 with $4,000 in United States currency to purchase

6   methamphetamine from defendant LOPEZ.

7        7.   On or about August 1, 2006, defendant ORELLANA walked

8   outside of the Burger King restaurant with CI-1 to meet with

9   defendant LOPEZ.

10       8.   On or about August 1, 2006, defendant LOPEZ met with

11  defendant ORELLANA and CI-1 outside the Burger King restaurant.

12       9.   On or about August 1, 2006, defendant ORELLANA and CI-1

13  entered defendant LOPEZ's vehicle, and defendant LOPEZ handed CI-

14  1 a brown paper bag holding a white plastic container containing

15  approximately 114.4 grams of actual methamphetamine in return for

16  $4,000 in United States currency.

17       10.  On or about August 1, 2006, defendant ORELLANA and CI-1

18  entered a white truck to meet with defendant CORTEZ.

19       11.  On or about August 1, 2006, defendant CORTEZ inspected

20  the methamphetamine purchased from defendant LOPEZ and returned

21  the methamphetamine to CI-1.

22       12.  On or about August 2, 2006, defendant CORTEZ spoke by

23  telephone with CI-1 and instructed CI-1 to provide him with a

24  portion of the proceeds defendant CORTEZ expected CI-1 to make as

25  a result of reselling the methamphetamine purchased from

26  defendant LOPEZ the previous day.

27       13.  On or about August 2, 2006, defendants CORTEZ and

28  ORELLANA met with CI-1 at the corner of Olympic Boulevard and

Catalina Street in Los Angeles, and CI-1 provided defendants CORTEZ and ORELLANA with $2,000 in United States currency.

14. On or about August 4, 2006, defendant CORTEZ spoke by telephone with CI-1 and instructed CI-1 to provide him with the additional $6,000 defendants CORTEZ and ORELLANA expected CI-1 to make by reselling the methamphetamine purchased from defendant LOPEZ on or about August 1, 2006.

15. On or about August 4, 2006, defendants CORTEZ and ORELLANA met with CI-1 at the corner of 8th Street and Berendo Street in Los Angeles, and CI-1 provided defendant ORELLANA with $6,000 in United States currency.

COUNT TWO

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

On or about August 1, 2006, in Los Angeles County, within the Central District of California, defendants PAUL MILTON CORTEZ JOVEL, also known as ("aka") "Oscar Antonio Chacon," aka "Lil Man"; ADOLFO MADRIGAL LOPEZ; and JOSE FREDI ORELLANA, aka "Pitbull," aka "Mysterio," knowingly and intentionally distributed more than fifty (50) grams, that is, approximately 114.4 grams, of methamphetamine (actual), a schedule II controlled substance.

COUNT THREE

[21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B)(viii)]

A.   OBJECT OF THE CONSPIRACY

Beginning on an unknown date, and continuing to on or about February 15, 2007, in Los Angeles County, within the Central District of California, defendant PAUL MILTON CORTEZ JOVEL, also known as ("aka") "Oscar Antonio Chacon," aka "Lil Man" ("CORTEZ"), and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally distribute more than fifty (50) grams of a mixture or substance containing a detectible amount of methamphetamine, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B)(viii).

B.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

The object of the conspiracy was to be accomplished in substance as follows:

1.   Defendant CORTEZ would find buyers for methamphetamine, negotiate a price, and arrange to sell the methamphetamine to the buyers at an agreed upon location.

2.   Defendant CORTEZ and an unknown individual, identified as "Rascal," would go to the agreed upon location and sell the methamphetamine to the buyers at the agreed upon price.

C.   OVERT ACTS

In furtherance of the conspiracy and to accomplish the object of the conspiracy, defendant CORTEZ, and others known and unknown to the Grand Jury, committed various overt acts in Los Angeles County, within the Central District of California,

7

including, but not limited to, the following:

1.   On or about February 2, 2007, defendant CORTEZ met with a confidential informant ("CI-2") and offered to sell CI-2 two ounces of methamphetamine at $600 per ounce.

2.   On or about February 12, 2007, defendant CORTEZ spoke by telephone with CI-2 and agreed to sell CI-2 two ounces of methamphetamine at $650 per ounce on Thursday, February 15, 2007.

3.   On or about February 15, 2007, defendant CORTEZ spoke by telephone with CI-2 and agreed to meet CI-2 at a residence located at 5511 Sierra Vista Avenue in Los Angeles (the "Sierra Vista Residence") later that day to sell CI-2 two ounces of methamphetamine.

4.   On or about February 15, 2007, defendant CORTEZ met with CI-2 at the Sierra Vista Residence and confirmed that CI-2 was ready to purchase two ounces of methamphetamine.

5.   On or about February 15, 2007, defendant CORTEZ spoke by telephone with CI-2 and told CI-2 that he would be coming shortly to meet CI-2 with the methamphetamine.

6.   On or about February 15, 2007, defendant CORTEZ and co-conspirator "Rascal" met CI-2 at the Sierra Vista Residence.

7.   On or about February 15, 2007, co-conspirator "Rascal" handed CI-2 a clear plastic bag containing approximately 55.3 grams of a mixture or substance containing a detectible amount of methamphetamine in return for $1,300 in United States currency.

COUNT FOUR

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

On or about February 15, 2007, in Los Angeles County, within the Central District of California, defendant PAUL MILTON CORTEZ JOVEL, also known as ("aka") "Oscar Antonio Chacon," aka "Lil Man," knowingly and intentionally distributed more than fifty (50) grams, that is, approximately 55.3 grams, of a mixture or substance containing a detectible amount of methamphetamine, a schedule II controlled substance.

COUNT FIVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

On or about March 20, 2007, in Los Angeles County, within the Central District of California, defendant PAUL MILTON CORTEZ JOVEL, also known as ("aka") "Oscar Antonio Chacon," aka "Lil Man," knowingly and intentionally distributed more than fifty (50) grams, that is, approximately 111.9 grams, of a mixture or substance containing a detectible amount of methamphetamine, a schedule II controlled substance.

COUNT SIX

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

On or about May 17, 2007, in Los Angeles County, within the Central District of California, defendant PAUL MILTON CORTEZ JOVEL, also known as ("aka") "Oscar Antonio Chacon," aka "Lil Man," knowingly and intentionally distributed more than fifty (50) grams, that is, approximately 83.6 grams, of a mixture or substance containing a detectible amount of methamphetamine, a schedule II controlled substance.

COUNT SEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

On or about May 24, 2007, in Los Angeles County, within the Central District of California, defendant PAUL MILTON CORTEZ JOVEL, also known as ("aka") "Oscar Antonio Chacon," aka "Lil Man," knowingly and intentionally distributed more than fifty (50) grams, that is, approximately 53.6 grams, of a mixture or substance containing a detectible amount of methamphetamine, a schedule II controlled substance.

COUNT EIGHT

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii)]

On or about May 24, 2007, in Los Angeles County, within the Central District of California, defendant PAUL MILTON CORTEZ JOVEL, also known as ("aka") "Oscar Antonio Chacon," aka "Lil Man," knowingly and intentionally distributed more than five (5) grams, that is, approximately 27.5 grams, of a mixture or substance containing a detectable amount of cocaine base in the form of crack cocaine, a scheduled II narcotic drug controlled substance.

COUNT NINE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii)]

On or about June 8, 2007, in Los Angeles County, within the Central District of California, defendant PAUL MILTON CORTEZ JOVEL, also known as ("aka") "Oscar Antonio Chacon," aka "Lil Man," knowingly and intentionally distributed more than fifty (50) grams, that is, approximately 83.9 grams, of a mixture or substance containing a detectable amount of cocaine base in the form of crack cocaine, a scheduled II narcotic drug controlled substance.

COUNT TEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

On or about June 20, 2007, in Los Angeles County, within the Central District of California, defendant PAUL MILTON CORTEZ JOVEL, also known as ("aka") "Oscar Antonio Chacon," aka "Lil Man," knowingly and intentionally distributed more than fifty (50) grams, that is, approximately 55.1 grams, of a mixture or substance containing a detectible amount of methamphetamine, a schedule II controlled substance.


A TRUE BILL


_—S —_____
Foreperson


THOMAS P. O'BRIEN
United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division


ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Violent & Organized Crime Section


PETER A. HERNANDEZ
Assistant United States Attorney
Deputy Chief, Violent & Organized Crime Section


SCOTT M. GARRINGER
JENNIFER A. CORBET
Assistant United States Attorneys

15